UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
WILLIAM and MARGARET CUFF, on
behalf of their minor son, B.C.,

                Plaintiff,

-vs-                                                  07 Civ. 10996 (WCC)

VALLEY CENTRAL SCHOOL DISTRICT,
and BARBARA KNECHT, sued in her
individual capacity,

                Defendants.
-----------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**


STEPHEN BERGSTEIN (6810)

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277
Counsel for plaintiffs

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I:   THE COMPLAINT STATES A CLAIM UNDER THE
           FIRST AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

POINT II:  DEFENDANT KNECHT IS NOT ENTITLED TO
           QUALIFIED IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

Anderson v. Creighton, 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Bernheim v. Litt, 79 F.3d 318 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Bethel School District v. Fraser, 478 U.S. 675 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Boim v. Fulton County School District, 494 F.3d 978 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . 8

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Goss v. Lopez, 419 U.S. 565 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Guiles v. Marineau, 461 F.3d 320 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

Hazelwood v. Kuhlmeier, 484 U.S. 260 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Horne v. Coughlin, 155 F.3d 26 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re State Police Litig., 88 F.3d 111 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 3

LaBounty v. Coughlin, 137 F.3d 68 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Loria v. Gorman, 306 F.3d 1271 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Morse v. Frederick, 127 S. Ct. 2618 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5

New Jersey v. T.L.O., 469 U.S. 325 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 3

Ponce v. Socorro School District, 508 F.3d 765 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . 8, 9

Saxe v. State College Area Sch. Dist., 240 F.3d 200 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 8

Tellier v. Fields, 280 F.3d 69 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Tinker v. Des Moines School District, 393 U.S. 503 (1969) . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 12

Williams v. Greifinger, 97 F.3d 699 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Wisniewski v. Board of Education, 494 F.3d 34 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 5-9, 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
WILLIAM and MARGARET CUFF, on
behalf of their minor son, B.C.,

                Plaintiff,

-vs-                                                                                              07 Civ. 10996 (WCC)

VALLEY CENTRAL SCHOOL DISTRICT,
and BARBARA KNECHT, sued in her
individual capacity,

                Defendants.
------------------------------------------------------X

## PRELIMINARY STATEMENT

Plaintiffs submit this memorandum of law in opposition to defendants' motion to dismiss the Complaint under Rule 12(b)(6). As set forth below, defendants overreacted when plaintiffs' ten-year old son, B.C., turned in a classroom assignment stating that he wished to "blow up the school with all the teachers in it." Viewing the Complaint in the light most favorable to plaintiffs, defendants had no basis to believe that B.C. had the means or intent to carry out this "wish." He did not disrupt the educational process in any way. Moreover, the punishment was excessive in violation of the First Amendment. For the reasons set forth below, as the Complaint states a claim upon which relief may be granted, this Court should deny the motion to dismiss.

## STATEMENT OF FACTS

At all times relevant to this action, plaintiff's ten year-old son, B.C., was a fifth grade student at Berea Elementary School in the Valley Central School District. B.C. has never exhibited any violent tendencies in or out of school. (Complaint ¶ 7).

On September 12, 2007, as part of a classroom exercise, B.C.'s science teacher asked her

students to fill in a picture of an astronaut by describing their personality and other personal attributes. Id. at ¶ 8. Using a crayon, B.C. wrote in his birthday, the name of his teacher and his favorite sports. Reflecting his wishes, B.C. jokingly wrote: "blow up the school with all the teachers in it." Id. at ¶ 9. See, Exhibit 1 to Bergstein aff.[1]

      B.C.'s statement was not shared with his classmates. Instead, he gave the assignment to his teacher who, in turn, notified the principal, defendant Barbara Knecht. Id. at ¶¶ 10-11. Knecht prepared a statement for B.C. to sign before his parents could speak to him or review the statement. Id. at ¶ 12. That day, Knecht advised B.C.'s parents that, as a result of his "written violent threat against Berea Elementary School and its occupants," he was suspended externally for five days and would also serve one day's internal suspension. Id. at ¶ 13.

      B.C. was suspended from September 14-21, 2007. Id. at ¶ 14. On September 25, 2007, through counsel, plaintiffs asked the Board of Education to expunge B.C.'s record of the incident. On October 9, 2007, ratifying the suspension, the Board denied that application. Id. at ¶ 15.

      The Complaint alleges that school authorities knew or had reason to know that B.C.'s classroom statement posed no threat to anyone. Defendants knew that B.C. did not have the means or the capacity to "blow up the school." Id. at ¶ 16. Moreover, B.C.'s sanction – six days' external/internal suspension – ranks among the most severe punishments for aberrant student behavior in the district's Code of Conduct, ahead of such lesser discipline as verbal warning, written

---

[1] As the drawing is incorporated by reference in the Complaint at ¶ 9, this Court may review it on this Rule 12 motion. See, Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993) ("When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit").

notification to parents, reprimand and suspension from extracurricular activities. Id. at ¶ 17. As B.C.'s written statement was his first "offense," the punishment violates the District's progressive discipline policy. Id. at ¶ 18.

## ARGUMENT

## POINT I

## THE COMPLAINT STATES A CLAIM UNDER THE FIRST AMENDMENT

Under Rule 12(b)(6), this Court construes the complaint liberally, accepting all factual allegations as true, and drawing all reasonable inferences in the plaintiffs' favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). "The review of such a motion is limited, and 'the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). Moreover, "in considering a motion to dismiss for failure to state a claim . . . a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.'" Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). "This standard is 'applied with particular strictness when the plaintiff complains of a civil rights violation." Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998).

"Our cases make clear that students do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.' At the same time, we have held that 'the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings,' and that the rights of students 'must be applied in light of the special characteristics of the school environment.'" Morse v. Frederick, 127 S. Ct. 2618, 2622 (2007).

Surveying the legal standard, the Supreme Court recently noted that "student expression

may not be suppressed unless school officials reasonably conclude that it will 'materially and substantially disrupt the work and discipline of the school.'" Id. at 2626 (quoting Tinker v. Des Moines School District, 393 U.S. 503, 513 (1969)).

A context-driven analysis governs the constitutionality of student speech restrictions and related punishment. For example, recently summarizing the holding in Tinker, which sided with anti-war students who wore black armbands to school, the Supreme Court noted that "[t]he essential facts of Tinker are quite stark, implicating concerns at the heart of the First Amendment. The students sought to engage in political speech, using the armbands to express their 'disapproval of the Vietnam hostilities and their advocacy of a truce, to make their views known, and, by their example, to influence others to adopt them.' Political speech, of course, is 'at the core of what the First Amendment is designed to protect.'" Although the armbands offended other students, "[t]hat interest was not enough to justify banning a silent, passive expression of opinion, unaccompanied by any disorder or disturbance." Morse, 127 S. Ct. at 2626.

In Bethel School District v. Fraser, 478 U.S. 675 (1986), upholding discipline against a student whose commencement speech employed sexual innuendo, the Court applied a different analysis: "the School District acted entirely within its permissible authority in imposing sanctions upon Fraser in response to his offensively lewd and indecent speech. . . . The First Amendment does not prevent the school officials from determining that to permit a vulgar and lewd speech such as respondent's would undermine the school's basic educational mission. A high school assembly or classroom is no place for a sexually explicit monologue directed towards an unsuspecting audience of teenage students. Accordingly, it was perfectly appropriate for the school to disassociate itself to make the point to the pupils that vulgar speech and lewd conduct is wholly inconsistent with the

'fundamental values' of public school education." Id. at 685-86.

The Court next addressed student speech in Hazelwood v. Kuhlmeier, 484 U.S. 260 (1988), holding that the principal could edit a school-sponsored newspaper. Again applying a contextual analysis, the Court reasoned that "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." Id. at 273.

Finally, in Morse, the Court held that the principal could discipline a student for unfurling a drug-related banner off school property where it was visible to students on a field trip. Central to the holding in Morse was the school's responsibility to shield students from speech that arguably advocated drug use. 127 S.Ct. at 2628-29. Morse noted that the student speech cases each turn on their unique circumstances. See, id. at 2627 ("Fraser established that the mode of analysis set forth in Tinker is not absolute . . . Kuhlmeier does not control this case because no one would reasonably believe that Frederick's banner bore the school's imprimatur"). See also, id. at 2629 (resolving the case in light of the "special characteristics of the school environment") (citing Tinker, 393 U.S. at 506).

The Second Circuit applied Morse in Wisniewski v. Board of Education, 494 F.3d 34 (2d Cir. 2007), holding that, "[w]ith respect to school officials' authority to discipline a student's expression reasonably understood as urging violent conduct, we think the appropriate First Amendment standard is the one set forth by the Supreme Court in Tinker . . . In its most recent consideration of a First Amendment challenge to school discipline in response to a student's allegedly protected speech, the Supreme Court viewed the [following] formulation as Tinker's

5

holding: 'Tinker held that student expression may not be suppressed unless school officials reasonably conclude that it will 'materially and substantially disrupt the work and discipline of the school.'" Id. at 39. See also, Guiles v. Marineau, 461 F.3d 320, 325 (2d Cir. 2006) ("for . . . speech that is neither vulgar, lewd, indecent or plainly offensive under Fraser, nor school-sponsored under Hazelwood, the rule of Tinker applies. Schools may not regulate such student speech unless it would materially and substantially disrupt classwork and discipline in the school").

In Wisniewski, an eighth grade student circulated an instant message to classmates depicting a "small drawing of a pistol firing a bullet at a person's head, above which were dots representing splattered blood. Beneath the drawing appeared the words 'Kill Mr. VanderMolen.' Philip VanderMolen was Aaron's English teacher at the time." 494 F.3d at 36. The student's classmates were able to view this message for three weeks. After VanderMolen learned about the message, he reported it to school authorities, who suspended the student for a semester. Id. at 36-37. Upholding the discipline, the Second Circuit held that, while the message was created away from school property, "it was reasonably foreseeable that the IM icon would come to the attention of school authorities and the teacher whom the icon depicted being shot. The potentially threatening content of the icon and the extensive distribution of it, which encompassed 15 recipients, including some of Aaron's classmates, during a three-week circulation period, made this risk at least foreseeable to a reasonable person, if not inevitable. And there can be no doubt that the icon, once made known to the teacher and other school officials, would foreseeably create a risk of substantial disruption within the school environment." Id. at 39-40.

This Complaint cannot be dismissed under the contextual approach to analyzing student speech. Under the circumstances, B.C.'s stated desire to "blow up the school with the

6

teachers in it" did not warrant six days' suspension. As noted above, the test under <u>Tinker</u> is whether "school officials reasonably conclude that it will 'materially and substantially disrupt the work and discipline of the school.'" <u>Wisniewski</u>, 494 F.3d at 39. This case is nothing like <u>Wisniewski</u>, and defendants' detailed summary of that case only highlights the distinction. Viewing the Complaint in the light most favorable to plaintiff, school officials could not have "<u>reasonably</u> conclud[ed] that [B.C.'s written statement would] <u>materially and substantially</u> disrupt the work and discipline of the school." <u>Id.</u> (emphases supplied). Unlike <u>Wisniewski</u> and <u>Morse</u>, none of B.C.'s classmates saw the message. Only his teacher saw it. She could not have felt threatened by B.C.'s statement, written in crayon on the picture of an astronaut. <u>See</u>, <u>Doninger v. Niehoff</u>, 514 F. Supp. 2d 199, 216 (D. Conn. 2007) (emphasizing that in <u>Wisniewski</u>, "[t]he student shared his IM icon with 15 of his friends, including fellow classmates, over the course of three weeks," making it reasonably foreseeable that the message would "come to the attention of school authorities and the teacher whom the icon depicted being shot . . . [a]nd there can be no doubt that the icon, once made known to the teacher and other school officials, would foreseeably create a risk of substantial disruption within the school environment").

Unlike <u>Wisniewski</u>, B.C. did not create fear and apprehension by allowing a violent message to linger for three weeks, understandably distressing the target of his ire, Mr. VanderMolen, who "asked and was allowed to stop teaching Aaron's class." 494 F.3d at 36. Not only was Aaron Wisniewski's IM intentionally provocative, as the Second Circuit emphasized in finding that the message "create[d] a foreseeable risk of substantial disruption within the school environment," <u>id.</u> at 40, its widespread distribution and "potentially threatening content" <u>did</u> interfere with the educational mission in prompting the school to assign Aaron a new teacher. This sequence of events

does not come close to describing B.C.'s innocent statement, which neither materially nor substantially interfered with the educational process.

In addition, unlike cases affirming student discipline in response to Columbine-style threats, see, e.g., Ponce v. Socorro School District, 508 F.3d 765 (5th Cir. 2007) and Boim v. Fulton County School District, 494 F.3d 978 (11th Cir. 2007), B.C. was obviously not a disturbed young man with extensive diary entries warranting a drastic response. Rather, B.C. was a ten-year old boy with no history of troublesome behavior. He wrote his alleged "threat" in crayon on a class assignment/cartoon that also reflected his favorite activities and other aspects of his personality. As defendants note in their brief, the question is whether the speech "reasonably could be perceived as a threat of school violence." (Def. br. at 4). Accepting the Complaint as true for purposes of this motion, school authorities had no reasonable basis to conclude that B.C. had the means or intent to carry out any violence at school or that he was even making a serious threat of violence. Wisniewski, 494 F.3d at 39-40. Put another way, the District had no basis to conclude that B.C.'s assignment would "materially and substantially disrupt the work and discipline of the school," and defendants do not provide any serious argument to the contrary. Id. See also, Guiles, 461 F.3d at 330 (granting declaratory judgment to student where "[t]he parties agree that Guiles's T-shirt did not cause any disruption or confrontation in the school. Nor do defendants contend they had a reasonable belief that it would"); Saxe v. State College Area Sch. Dist., 240 F.3d 200, 211 (3d Cir. 2001) ("Tinker requires a specific and significant fear of disruption, not just some remote apprehension of disturbance"). As B.C.'s statement was not "expression reasonably understood as urging violent conduct," Wisniewski, 494 F.3d at 38, this motion should be denied.

Strengthening plaintiffs' case is defendants' overreaction to B.C.'s speech. In

8

Wisniewski, the Court of Appeals assumed that the Constitution limits the scope of the school district's punishment in speech cases. See, 494 F.3d at 40 ("we need not determine whether such a challenge would have to be grounded on the First Amendment itself or the substantive component of the Due Process Clause of the Fourteenth Amendment"). As defendants note, "threats of an attack on a school and its students must be taken seriously." (Def. br. at 5) (citing Ponce, 508 F.3d at 771) (emphasis in original). But that argument falsely assumes that the school reasonably thought that B.C. was capable of carrying out a widespread violent attack against the school. Defendants further assume that the Constitution authorizes any punishment, no matter how draconian.

Under the comparable cases challenging the constitutionality of student searches, "[t]he Court [has] set forth a twofold reasonableness inquiry: first, the court must consider whether the action was 'justified at its inception,' and second, the court must determine whether the action, as it actually transpired, was 'reasonably related in scope to the circumstances which justified the interference in the first place.'" Bisignano v. Harrison Cent. Sch. Dist., 113 F. Supp. 2d 591, 596 (S.D.N.Y. 2000) (quoting New Jersey v. T.L.O., 469 U.S. 325, 341 (1985)). Compare, Goss v. Lopez, 419 U.S. 565, 576 (1975) ("A short suspension is, of course, a far milder deprivation than expulsion. But, 'education is perhaps the most important function of state and local governments,' and the total exclusion from the educational process for more than a trivial period, and certainly if the suspension is for 10 days, is a serious event in the life of the suspended child").

Not only did the Principal in bad faith procure B.C.'s signature on an incriminating statement before his parents could speak to him or review it (Complaint at ¶ 12), but the Code of Conduct lists suspension among the most severe punishments. The Code lists 12 options for students in need of discipline: (1) verbal warning; (2) written notification to the parents; (3)

9

probation; (4) reprimand; (5) suspension from transportation; (6) suspension from extracurricular activities; (7) suspension of other privileges; (8) exclusion from a particular class; (9) in-school suspension; (10) out-of-school suspension; (11) superintendent's hearing; (12) referral to appropriate authorities." (Exhibit 2 to Bergstein aff., at 9).[2] Upon reviewing B.C.'s classroom submission, defendant bypassed eight of the more lenient punishments and invoked one days' in-school suspension. But that punishment was not enough for the District. Defendants also imposed out-of-school suspension, sending B.C. home for five days. In all, he was suspended for six days. Applying the more severe punishments was excessive and irrational in light of the plainly effective remedies available to the District, particularly since school authorities knew that B.C. was not serious about blowing up the school and had no prior history of aberrant behavior. Relatedly, while the Code of Conduct instructs school officials to apply progressive discipline, "i.e., a student's first violation should merit a lighter penalty than subsequent violations" (id.), that policy was ignored in immediately suspending this student with a clean disciplinary record.

**POINT II**

**DEFENDANT KNECHT IS NOT ENTITLED TO QUALIFIED IMMUNITY**

In determining whether the Complaint asserts the violation of a clearly established right, the Court should consider (1) whether the right was defined with reasonable specificity, (2) whether controlling precedent supports the existence of the right and (3) whether, under pre-existing law, a reasonable public employee would have understood that his actions were unlawful. Horne v. Coughlin, 155 F.3d 26, 29 (2d Cir. 1998). Put another way, for § 1983 liability to attach against a

---

[2] As the Code of Conduct is incorporated by reference in the Complaint at ¶ 16, this Court may review it on this Rule 12 motion. Brass, 987 F.2d at 150.

defendant, the unlawfulness of her conduct must have been apparent. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted. The salient question . . . is whether the state of the law [at the time of the challenged conduct] gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." Loria v. Gorman, 306 F.3d 1271, 1281-82 (2d Cir. 2002) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001); Hope v. Pelzer, 536 U.S. 730, 741 (2002)).

The Court of Appeals has warned that "an overly narrow definition of the right can effectively insulate the government's actions by making it easy to assert that the narrowly defined right was not clearly established." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). "A court need not have passed on the identical course of conduct in order for its illegality to be 'clearly established.'" Williams v. Greifinger, 97 F.3d 699, 703 (2d Cir. 1996). See also, Hope, 536 U.S. at 731 ("general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] been held unlawful.' . . . [O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. . . . Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding"); Tellier v. Fields, 280 F.3d 69, 84 (2d Cir. 2000) (a law is "clearly established" if a ruling on the issue is "clearly foreshadow[ed]" by the Circuit's decisions).

11

In seeking qualified immunity, defendant Knecht improperly frames the issue.[3] The question is not whether "making threats against teachers" is a clearly-established right. (Def. br. at 8). The issue is whether the case law placed Knecht on notice that she could not legally discipline B.C. for his classroom statement. Under Wisniewski, 494 F.3d at 40, Knecht could not punish B.C. unless it was reasonably foreseeable that the classroom assignment would create a risk of substantial disruption within the school environment. Every school administrator is aware of Tinker's rule that administrators cannot regulate student speech unless the conduct "might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities." 393 U.S. at 514. That test was affirmed in Morse v. Frederick, decided in June 2007.

Knecht cannot rely on disputed facts in seeking qualified immunity. In re State Police Litig., 88 F.3d 111, 125-27 (2d Cir. 1996). As outlined in Point I, the Complaint does not compel the inference that B.C.'s speech reasonably led Knecht to believe that anyone at the school was at risk or that B.C. disrupted the educational process. Contrary to defendants' memorandum of law, B.C. did not threaten anyone, and no one would have reasonably taken seriously his statement about "blowing up the school." At this stage of the case, Knecht is not entitled to qualified immunity.

---

[3] The School District is not entitled to qualified immunity. See, Goldberg v. Rocky Hill, 973 F.2d 70, 74 (2d Cir. 1992) ("there is no immunity defense, either qualified or absolute, available to a municipality sought to be held liable under 42 U.S.C. § 1983"). Nor is Knecht entitled to qualified immunity on the injunction claim.

## CONCLUSION

As the Complaint states a claim upon which relief may be granted, this Honorable Court should deny the motion to dismiss in its entirety.

Dated:    February 20, 2008

Respectfully submitted,

S/_____
STEPHEN BERGSTEIN (6810)

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277
Counsel for plaintiffs
