UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
WILLIAM and MARGARET CUFF, on behalf of                 07 CV 10996 (WCC)
their minor son, B.C.,

                              Plaintiffs,

                 - against -

VALLEY CENTRAL SCHOOL DISTRICT, and
BARBARA KNECHT, sued in her individual capacity.

------------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW**

                                             MIRANDA SOKOLOFF SAMBURSKY
                                             SLONE VERVENIOTIS LLP
                                             Attorneys for Defendants
                                             240 Mineola Boulevard
                                             Mineola, New York 11501
                                             (516) 741-7676
                                             Our File No.: 07-725

Of Counsel:
     Adam I. Kleinberg
     Charles A. Martin

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ........................................................................................................................ 2

POINT I

        PLAINTIFFS CANNOT DEMONSTRATE A FIRST AMENDMENT VIOLATION ............................................................................. 2

POINT II

        PLAINTIFFS PUNISHMENT WAS REASONABLE AND THE ROLE OF THE COURTS IS NOT TO SUBSTITUTE JUDGMENT FOR THAT OF SCHOOL DISTRICTS ...................................... 6

POINT III

        DEFENDANT KNECHT IS ENTITLED TO QUALIFIED IMMUNITY ............................................................................................................. 8

CONCLUSION ..................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Bethel School District v. Fraser,* 478 U.S. 675 (1986) ................................................................ 2

*Bisignano v. Harrison Cent. Sch. Dist.*, 113 F.Supp 2d 591 (S.D.N.Y. 2000) ............................... 6

*Doninger v. Niehoff*, 514 F.Supp.2d 199 (D.Conn. 2007) ......................................................... 4, 5

*Goss v. Lopez*, 419 U.S. 565 (1975) ............................................................................................... 7

*Guiles v. Marineau*, 461 F3d 320 (2d Cir. 2006) ........................................................................... 3

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ........................................................................... 8

*Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260 (1988) ......................................................... 4

*Malley v. Briggs*, 475 U.S. 335, 341 (1986) .................................................................................. 8

*Morse v. Frederick*, 127 S. Ct. 2618 (2007) .................................................................................. 2

*Muller v. Jefferson Lighthouse Sch.,* 98 F.3d 1530, 1539 (7th Cir. 1996) ..................................... 5

*S.G. ex rel. A.G. v. Sayreville Bd. of Educ.*, 333 F.3d 417(3rd Cir. 2003) .................................. 4, 5

*Saxe v. State College Area Sch. Dist.*, 240 F.3d 200 (3d Cir. 2001) .............................................. 4

*Tinker v. Des Moines Independent Community School District,* 393 U.S. 503 (1969) .................. 2

*Wisniewski v. Board of Educ. of Weedsport Cent. School Dist.,* 494 F.3d 34, 39
    (2d Cir. 2007) ............................................................................................................................ 2

**PRELIMINARY STATEMENT**

There is no dispute between the parties that B.C.'s science teacher gave a classroom assignment which B.C. responded to by expressing his wish to "blow up the school with all the teachers in it." It is also undisputed that B.C. proceeded to give this written statement to his classroom teacher. The question in this case is whether a school district and its officials are authorized to punish a student such as B.C. upon receiving a threatening statement expressing a student's desire to destroy the school and physically harm teachers. The defendants respectfully submit that the resulting disciplinary action afforded to B.C. was both lawful and justified.

As set forth herein, where students, and more specifically elementary grade students, have made threatening/violent expressions on campus, or even off-campus if they would be likely to come to the attention of school authorities, then those statements are not protected speech. Toward this end, the Supreme Court has held that schools can limit student speech if there is a valid pedagogical concern, and that preventing students from making violent statements is a valid such concern. Therefore, B.C.'s statement that he wished to "blow up the school with all the teachers in it" is unprotected speech and the defendant school district's imposition of discipline was lawful and justified.

Accordingly, the suspension arising out of B.C.'s written, communicated threat does not violate the First Amendment and dismissal of this action is warranted.

Further, Barbara Knecht is entitled to qualified immunity from the claim asserted against her in her individual capacity.

## ARGUMENT

### POINT I

#### PLAINTIFFS CANNOT DEMONSTRATE A FIRST AMENDMENT VIOLATION.

The Second Circuit has held that a student's violent expression depicting and calling for the killing of teachers crosses the boundaries of protected speech and constitutes conduct that poses a reasonably foreseeable risk that it would materially and substantially disrupt the work and discipline of the school. *See Wisniewski v. Board of Educ. of Weedsport Cent. School Dist.,* 494 F.3d 34, 39 (2d Cir. 2007) *citing Tinker v. Des Moines Independent Community School District,* 393 U.S. 503 (1969).

In the case at bar, plaintiffs seek to impose a new standard of review for threats made at school by students. In this regard, plaintiffs seek to require a school district to affirmatively determine that the student making the threat "had the means or the intent to carry out any violence at school." *See* plaintiff's opposition at p. 8. Simply stated, this is not the applicable standard of review and is unsupported by any controlling decisional authorities.

To determine the proper standard of review, we refer to the seminal cases involving First Amendment rights afforded to student speech. The United States Supreme Court has expressly held that the First Amendment does not give students the right to make vulgar and lewd speech. *See Bethel School District v. Fraser,* 478 U.S. 675 (1986). In addition, the Supreme Court has found that the First Amendment does not give students the right to make pro-drug statements. *See Morse v. Frederick,* 127 S. Ct. 2618 (2007). The Second Circuit, following the above-cited decisional authorities, has held that the First Amendment does not give a student the right to make violent expressions calling for the killing of teachers. *See Wisniewski,* 494 F.3d 34.

Thus, courts have focused on the type of speech and its relation to the pedagogical mission of the school. For example, in *Morse*, the Supreme Court wrote that schools have a compelling interest in controlling drug abuse and therefore had the ability to control speech that related to drug abuse. See *Morse,* 127 S. Ct. 2618. In *Fraser*, when examining the lewd and vulgar speech of a student, the Court held that "The First Amendment does not prevent the school officials from determining that to permit a vulgar and lewd speech . . . would undermine the school's basic educational mission." See *Fraser*, 478 U.S. at 685.

Plaintiffs' opposition maintains that B.C.'s violent statement was a joke that could not be interpreted as a true threat. See Plaintiffs' opposition at pp. 2, 7. However, in *Wisniewski*, the Second Circuit held that school districts have broad authority to sanction threats of violence in school, including those that may not be considered as real threats in a criminal context. See *Wisniewski* 494 F.3d 34.

Analogous to the facts alleged in this case, the plaintiff in *Morse* claimed that his banner at issue was a joke and "that the words were just nonsense meant to attract television cameras." See *Morse* 127 S. Ct. at 2624-2625. While the Court acknowledged that there were people to whom the subject words meant nothing, the Court focused on the pedagogical result of the student's expression, which superseded the possibility that the act was simply a joke. *Id*.

It goes without question that B.C.'s statement at issue does not constitute political speech. Accordingly, plaintiffs' attempt to analyze B.C.'s statement under the analysis utilized in *Guiles v Marineau*, 461 F3d 320 (2d Cir. 2006) is misplaced. In *Guiles*, plaintiff was wearing a t-shirt containing a political message that the school attempted to censor. There was no threat of violence as in the instant case. Moreover, the Second Circuit in *Guiles*, relied on the Ninth

3

Circuit's ruling in *Morse* which was later overturned by the Supreme Court. <u>See</u> *Doninger v. Niehoff*, 514 F.Supp.2d 199, 218 (D. Conn. 2007).

The Supreme Court, examining political speech in a case involving the wearing of black armbands, noted that even though such an act may offend some students, that interest was insufficient to justify banning "a silent, passive expression of opinion, unaccompanied by any disorder or disturbance." <u>See</u> *Tinker*, 393 U.S. 503. However, in the instant case, B.C. did not make a political statement and his conduct cannot be construed as a "silent, passive expression of opinion." Rather, B.C.'s stated desire that he wished to blow up the school and teachers, and gave the statement to his teacher, constituted an active expression of violent intent. He was disciplined accordingly. In this regard, the Supreme Court has held that "A school need not tolerate student speech that is inconsistent with its 'basic educational mission." <u>See</u> *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260 (1988) *quoting Fraser,* 478 U.S. at 685.

Plaintiffs' opposition cites to the Third Circuit's decision in *Saxe v. State College Area Sch. Dist.*, 240 F.3d 200 (3d Cir. 2001), contending that the defendants were not permitted to discipline B.C. because his statement was not urging violent conduct. <u>See</u> plaintiffs' opposition at p. 8. Yet this is a misreading of the *Saxe* case, as demonstrated in the Third Circuit's very own subsequent analysis of the decision.

In *S.G. ex rel. A.G. v. Sayreville Bd. of Educ.*, 333 F.3d 417 (3rd Cir. 2003), the plaintiff was a kindergarten student who was suspended for threatening to shoot one of his friends during a playground game of cops and robbers. *Id*. In its analysis, the Third Circuit looked at its prior decision and found that a balance must be struck between a student's First Amendment rights and the ability of the school to foster socially acceptable behavior. *Id*. As a result, the Court held "Here, where the school officials determined that threats of violence and simulated firearm

4

use were unacceptable, even on the playground, the balance tilts in favor of the school's discretionary decision-making." *Id*.

While plaintiffs' point out that B.C. was just ten years old at the time of the relevant events, this too is a fact warranting a decision in the defendants' favor. Toward this end, the Supreme Court has recognized that a school's authority to control student speech in an elementary school setting is undoubtedly greater than in a high school setting. *See Fraser*, 478 U.S. at 683. "Indeed, one Court of Appeals has stated that it is unlikely that *Tinker* and its progeny apply to elementary school students." *See S.G. ex rel. A.G. v. Sayreville Bd. of Educ.*, 333 F.3d 417 *citing Muller by Muller v. Jefferson Lighthouse Sch.,* 98 F.3d 1530, 1539 (7th Cir. 1996).

Similarly, plaintiffs' reliance on the decision in *Doninger v. Niehoff*, 514 F.Supp.2d 199 (D.Conn. 2007) also fails for the purpose sought. The *Doniger* Court was analyzing the *Wisniewski* decision and under what circumstances off-campus speech fell outside First Amendment protection. For purposes of the instant motion before this Court, the *Doninger* decision states that there is "no question that teaching students the values of civility and respect for the dignity of others is a legitimate school objective" and that this objective can be a basis for restricting student speech even when the speech is not vulgar or offensive in the *Fraser* sense. *See Doninger* 514 F.Supp.2d at 215-16.

Based on all of the aforementioned, as well as the reasons cited in defendants' moving papers, dismissal of plaintiffs' claims is warranted as a matter of law.

## POINT II

### PLAINTIFFS PUNISHMENT WAS REASONABLE AND THE ROLE OF THE COURTS IS NOT TO SUBSTITUTE JUDGMENT FOR THAT OF SCHOOL DISTRICTS.

The requirements of procedural due process for suspension of students were set forth in *Goss v. Lopez*, 419 U.S. 565 (1975). The Supreme Court concluded that a student facing a suspension of ten days or less must be given oral or written notice of the charges against him or her and a student who denies the charges must be given an explanation of the evidence the authorities have and an opportunity to present his or her side of the story. *Id*. at 581. In the majority of cases, "the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred." *Id*.

Plaintiff attempts to equate B.C.'s suspension with a case where a gym teacher locked a student in a broom closet. *See* plaintiffs' opposition at p. 9 *citing Bisignano v. Harrison Cent. Sch. Dist.*, 113 F.Supp 2d 591 (S.D.N.Y. 2000). In *Bisignano*, the Court recognized that locking a student in a broom closet was a seizure and required a Fourth Amendment analysis. B.C. does not allege that he was subjected to any such corporal punishment and therefore *Bisignano* does not apply.

While plaintiffs allege that the punishment was not in accordance with the District's Code of Conduct, under the circumstances, B.C. can be classified as a "violent" pupil who committed a "serious" violation of the Code. *See* Plaintiff's Exh. B at p. 7. In this regard, the Code defines a "violent" pupil as one who "intimidates others in word, dress, or action." *See* plaintiffs' Exh. B at § D(6). The Code also defines a serious violation as, *inter alia*, threatening another with bodily harm. *See* plaintiffs' Exh. B at § D 1(a). Such "serious violations" may result in either a Superintendent's Hearing or suspension. *See* plaintiffs' Exh. B at § D. Thus,

the suspension of B.C. is in accordance with the guidelines of the Code. Moreover, as conceded in plaintiffs' opposition papers, the District's Board of Education reviewed the matter at plaintiffs' request and upheld the punishment afforded. *See* plaintiffs' opposition at p. 2.

### POINT III

#### DEFENDANT KNECHT IS ENTITLED TO QUALIFIED IMMUNITY.

The defense of "qualified immunity" requires courts to enter judgment in favor of a government employee unless the employee's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense is designed to protect "all but the plainly incompetent or those who knowingly violated the law." *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Plaintiff frames defendant Knecht's qualified immunity argument as, "whether the case law placed Knecht on notice that she could not legally discipline B.C. for his classroom statement." However, as set forth in Justice Breyer's concurrence in *Morse*, all nine Justices agreed that qualified immunity would shield the principal from liability in that case. *Morse,* 127 S. Ct. 2618 ("Were we to decide this case on the ground of qualified immunity, our decision would be unanimous, for the dissent concedes that Morse should not be held liable in damages for confiscating Frederick's banner.").

Thus, it is clear that in 2007, the state of the law was such that an administrator would be shielded by qualified immunity for imposing discipline for expression that was not consistent with the pedagogical missions of a school.

## CONCLUSION

For the reasons set forth herein and in our original Memorandum of Law, defendants respectfully request that the Court dismiss this action in its entirety or, in the alternative, dismiss the claims against the individually named defendant on the grounds of qualified immunity, together with such further relief as this Court may deem just, equitable, and proper.

Dated: Mineola, New York
February 28, 2008

        MIRANDA SOKOLOFF SAMBURSKY SLONE VERVENIOTIS LLP
        Attorneys for Defendants
        VALLEY CENTRAL SCHOOL DISTRICT, and BARBARA KNECHT

By: _____
    Adam I. Kleinberg (AIK-0468)
    Charles A. Martin (CAM-1881)
    The Esposito Building
    240 Mineola Blvd.
    Mineola, NY 11501
    (516) 741-7676
    Our File No.: 07-725