ORIGINAL
Fee Paid
#455.00
65/138

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WILLIAM and MARGARET CUFF, on
behalf of their minor son, B.C.,

                Plaintiffs,                07 Civ. 10996 (WCC)

                                            **NOTICE OF APPEAL**

-vs-

VALLEY CENTRAL SCHOOL DISTRICT
and BARBARA KNECHT, sued in her
individual capacity,

                Defendants.
-----------------------------------------------------------X

        PLEASE TAKE NOTICE that plaintiffs appeal to the United States Court of Appeals for the Second Circuit from each and every part of the district court's Memorandum Opinion and Order, entered on May 7, 2008, granting defendant's Rule 12(b)(6) motion, dismissing the Complaint.

Dated:    May 29, 2008
              Chester, New York

                                                          Respectfully submitted,

                                        S/ _____
                                            STEPHEN BERGSTEIN (6810)

                                            BERGSTEIN & ULLRICH, LLP
                                                  15 Railroad Avenue
                                                 Chester, New York 10918
                                                     (845) 469-1277
                                                   Counsel for plaintiff

To:    Adam I. Kleinberg, Esq.
       Miranda Sokoloff Sambursky Slone Verveniotis LLP
       240 Mineola Boulevard
       Mineola, N.Y. 11501

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
WILLIAM and MARGARET CUFF, on
behalf of their minor son, B.C.,

        Plaintiffs,                      07 Civ. 10996 (WCC)

-vs-

VALLEY CENTRAL SCHOOL DISTRICT
and BARBARA KNECHT, sued in her
individual capacity,

        Defendants.
------------------------------------------------------X

## AFFIRMATION OF SERVICE

      I, Stephen Bergstein, hereby affirm that on May 29, 2008, I caused to be served by regular mail the Notice of Appeal on counsel for defendant at the below address:

    Adam I. Kleinberg, Esq.
    Miranda Sokoloff Sambursky Slone Verveniotis LLP
    240 Mineola Boulevard
    Mineola, N.Y. 11501

                                                    STEPHEN BERGSTEIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
WILLIAM AND MARGARET CUFF, on behalf of
their minor son, B.C.,

                Plaintiffs,

-against-

VALLEY CENTRAL SCHOOL DISTRICT AND
BARBARA KNECHT, sued in her indvidual capacity,

                Defendants.
------------------------------------------------------------x



07 CV 10996 (WCC)
JUDGMENT

      Whereas the above entitled action having been assigned to the Honorable William C. Conner, U.S.D.J., and the Court thereafter on May 5, 2007, having handed down an Opinion and Order (Docket #14), granting defendants' motion to dismiss (Docket #7), with prejudice it is,

      **ORDERED, ADJUDGED AND DECREED:** that defendants' motion to dismiss the Complaint is granted and the action is dismissed with prejudice, and the case is hereby closed.

DATED: White Plains, New York
          May 07, 2007

                                    J. Michael McMahon
                                    Clerk of Court

E.O.D. 05-07-08

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - X
                                              :   07 Civ. 10996 (WCC)
WILLIAM and MARGARET CUFF, on behalf of       :
their minor son, B.C.,                            ECF CASE
                                              :
                    Plaintiffs,
                                              :
        - against -
                                              :   OPINION
                                                  AND ORDER
VALLEY CENTRAL SCHOOL DISTRICT and            :
BARBARA KNECHT, sued in her individual        :
capacity,
                                              :
                    Defendants.
                                              :
- - - - - - - - - - - - - - - - - - - - - - X
```

A P P E A R A N C E S :

        BERGSTEIN & ULLRICH, LLP
        **Attorneys for Plaintiffs**
        15 Railroad Avenue
        Chester, New York 10918

STEPHEN BERGSTEIN, ESQ.

    Of Counsel

        MIRANDA SOKOLOFF SAMBURSKY SLONE
         VERVENIOTIS LLP
        **Attorneys for Defendants**
        240 Mineola Boulevard
        Mineola, New York 11501

ADAM I. KLEINBERG, ESQ.
CHARLES A. MARTIN, ESQ.

    Of Counsel

**Copies E-Mailed to Counsel of Record**

**Conner, Sr. D.J.:**

This case arises out of the suspension of an elementary-school student, B.C., for what his teacher and school principal viewed as a written threat delivered to the teacher during the school day. Plaintiffs William and Margaret Cuff are B.C.'s parents. Defendants are Valley Central School District (the "District"), the district in which B.C.'s school is located, and Barbara Knecht ("Knecht"), the principal of B.C.'s school; Knecht is sued in her individual capacity. Plaintiffs argue that the suspension and defendants' subsequent refusal to expunge the event from B.C.'s record violated B.C.'s First Amendment rights. Defendants now move to dismiss pursuant to FED. R. CIV. P. 12(b)(6). For the following reasons, the motion is granted.

## BACKGROUND

The following facts are taken from the Complaint and are assumed to be true for purposes of this decision.

At the time relevant to this action, B.C. was ten years old and a fifth-grade student at Berea Elementary School. (Complt. ¶ 7.) On September 12, 2007, B.C.'s science teacher asked her students to fill in a picture of an astronaut with statements about their personalities; this was an in-class exercise. (*Id.* ¶ 8.) B.C. listed his birthday, his teacher's name, and his favorite sports. (*Id.* ¶ 9.) He also wrote "blow up the school with all the teachers in it." (*Id.*) B.C. then turned the assignment in to his teacher without showing it to any of his classmates. (*Id.* ¶ 10.)

After reviewing B.C.'s writing, the teacher notified defendant Knecht. (*Id.* ¶ 11.) That same day, Knecht informed plaintiffs that, "as a result of his 'written violent threat against Berea Elementary School and its occupants,'" B.C. would be suspended from school for five days and

1

would also serve one day of internal suspension. (*Id.* ¶ 12.) After B.C. served the suspension, plaintiffs requested, through counsel, that the Board of Education expunge this incident from B.C.'s record. (*Id.* ¶ 14.) The Board refused to do so, and this litigation followed. (*Id.*)

## DISCUSSION

### I. Standard of Review

On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183, (1984); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "The plaintiff's factual allegations must be enough to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964-65 (2007)). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are insufficient as a matter of law. *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978). The Court may consider the facts alleged in the complaint as well as any document attached as an exhibit to the complaint or incorporated by reference. *See* FED. R. CIV. P. 10(c); *Dangler v. N.Y. City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999); *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996).

### II. Whether B.C.'s Writing is Protected Speech

It is well established that "students do not 'shed their constitutional rights to freedom of

2

speech or expression at the schoolhouse gate.'" *Morse v. Frederick*, — U.S. —, 127 S. Ct. 2618, 2622 (2007) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)). But it is also clear that students in public schools enjoy a more limited form of First Amendment protection than do adults in society at large. *See Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986) ("[T]he constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings."). The Second Circuit recently provided a succinct summary of the key principles in this area:

> (1) schools have wide discretion to prohibit speech that is less than obscene – to wit, vulgar, lewd, indecent or plainly offensive speech, *Fraser*, 478 U.S. at 683-85; *Hazelwood*, 484 U.S. at 272 n. 4;
> (2) if the speech at issue is "school-sponsored," educators may censor student speech so long as the censorship is "reasonably related to legitimate pedagogical concerns," *Hazelwood*, 484 U.S. at 273; and
> (3) for all other speech, meaning speech that is neither vulgar, lewd, indecent or plainly offensive under *Fraser*, nor school-sponsored under *Hazelwood*, the rule of *Tinker* applies. Schools may not regulate such student speech unless it would materially and substantially disrupt classwork and discipline in the school. *See Tinker*, 393 U.S. at 513.

*Guiles ex rel. Guiles v. Marineau*, 461 F.3d 320, 325 (2d Cir. 2006) (citing *Fraser*, 478 U.S. at 683-85; *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 272-73 & n.4 (1988); *Tinker*, 393 U.S. at 513). After the Second Circuit decided *Guiles*, the Supreme Court held, in *Morse*, that schools may prohibit student speech that appears to advocate the use of illegal drugs. *Morse*, 127 S. Ct. at 2621.

In cases involving threats by students, the Second Circuit has instructed district courts to apply the rule of *Tinker*, which the Supreme Court recently reaffirmed in *Morse*: "'student expression may not be suppressed unless school officials reasonably conclude that it will "materially

3

and substantially disrupt the work and discipline of the school.""[1] *Wisniewski v. Bd. of Educ.*, 494 F.3d 34, 38 (2d Cir. 2007), *cert. denied*, 2008 WL 243683 (U.S. Mar. 31, 2008) (quoting *Morse*, 127 S. Ct. at 2625 (quoting, in turn, *Tinker*, 393 U.S. at 513)).

*Wisniewski* controls the outcome here and requires dismissal. The case involved a threatening image transmitted over the internet by a middle-school student, Aaron, to several of his classmates. *Id.* at 35-36. The image was "a small drawing of a pistol firing a bullet at a person's head, above which were dots representing splattered blood. Beneath the drawing appeared the words 'Kill Mr. VanderMolen'"; Mr. VanderMolen was Aaron's English teacher at the time. *Id.* at 36. The image was displayed as Aaron's AOL Instant Messaging ("IM") "buddy icon," which means that it was transmitted to every person with whom Aaron communicated in an IM conversation.[2] *Id.*

---

[1] The Second Circuit rejected the application of the "true threat" standard of *Watts v. United States*, 394 U.S. 705 (1969), which some courts have applied in the school context. *See Wisniewski*, 494 F.3d at 38 (citing *Doe v. Pulaski County Special Sch. Dist.*, 306 F.3d 616, 626-27 (8th Cir. 2002); *Lovell ex rel. Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 371-73 (9th Cir. 1996)). "True threats," which do not enjoy First Amendment protection, include statements by which "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). They do not include mere "political hyperbole." *Watts*, 394 U.S. at 708. In *Wisniewski*, the Second Circuit stated that the First Amendment gives school officials "significantly broader authority to sanction student speech than the *Watts* standard allows." *Wisniewski*, 494 F.3d at 38.

[2] The court explained the IM system as follows:
   Instant messaging enables a person using a computer with Internet access to exchange messages in real time with members of a group (usually called "buddies" in IM lingo) who have the same IM software on their computers. . . . Text sent to and from a "buddy" remains on the computer screen during the entire exchange of messages between any two users of the IM program.
   The AOL IM program, like many others, permits the sender of IM messages to display on the computer screen an icon, created by the sender, which serves as an identifier of the sender, in addition to the sender's name. The IM icon of the sender and that of the person replying remain on the screen during the exchange of text messages between the two "buddies," and each can copy the icon

4

Aaron's buddy icon was available for viewing for approximately three weeks, and fifteen of his "buddies" saw it during that time, including several of his classmates. *Id.* One of Aaron's classmates told Mr. VanderMolen about the icon, and he in turn told the school principal. *Id.* Aaron was ultimately suspended for five days. *Id.* A police officer and a psychologist both subsequently concluded that Aaron had meant the icon as a joke, had no violent intent and was not a threat. *Id.*

Aaron's parents challenged his suspension on, *inter alia*, First Amendment grounds. *Id.* at 37. The district court granted summary judgment to the defendants, and the Court of Appeals affirmed, holding that the buddy icon did not enjoy First Amendment protection. *Id.* In reaching its decision, the court considered two factors: the foreseeability that the buddy icon would come to the attention of school authorities and, once it did, the foreseeability of its creating "a risk of substantial disruption within the school environment." *Id.* at 39-40.

The "threatening content" of the image and its widespread distribution over a three-week period satisfied the first element, despite the fact that Aaron created and distributed the icon outside of school. *Id.* As to the second factor, the court observed: "there can be no doubt that the icon, once made known to the teacher and other school officials, would foreseeably create a risk of substantial disruption within the school environment." *Id.* at 40. The court described the foreseeability of such disruption as "clear." *Id.* In fact, the potential disruptive impact of speech that threatened a member of the school community was apparently so obvious to the court, so clear and beyond doubt, that no further discussion of the issue was warranted. *See id.*; *D.F. ex rel. Finkle v. Bd. of Educ.*, 386 F. Supp. 2d 119, 125-26 (E.D.N.Y. 2005) (holding that a student's exceedingly violent story about a

---

of the other and transmit it to any other "buddy" during an IM exchange. *Id.* at 35-36.

5

student who murders several of his classmates did not enjoy First Amendment protection because it "may materially interfere with the work of the school by disturbing the students and teachers").

*Wisniewski* makes this Court's inquiry straightforward. Here, unlike in *Wisniewski*, the threatening message was delivered directly to a teacher, so the likelihood that a school official would learn about it is not in question. *See* 494 F.3d at 39-40. The *Wisniewski* court had "no doubt" that the threatening image involved in that case "would foreseeably create a risk of substantial disruption within the school environment." *Id.* at 40. We have no doubt that the same is true of B.C.'s statement here. Although, as plaintiffs suggest, one might question whether a ten-year-old boy has the ability to "blow up" his school, even an unsuccessful attempt at violence has the potential to substantially interfere with the school's work. *See id.* at 40. Morever, the threat itself has obvious disruptive potential given its perfectly foreseeable distressing and distracting impact on those against whom it is made and the school community as a whole. *See id.*; *D.F.*, 386 F. Supp. 2d at 125-26.

The threat of serious school violence – including mass shootings perpetrated by students – is an unfortunate fact of life in twenty-first-century America. As the Ninth Circuit noted, such incidents are typically followed by expressions of regret that nothing was done to prevent the tragedy, as well as questions as to whether teachers and administrators overlooked any "warning signs" that the offending student posed a threat. *See LaVine v. Blaine Sch. Dist.*, 257 F.3d 981, 987 (9th Cir. 2001) (discussing the tragedies at Columbine, Thurston and Santee).

It is against this backdrop that courts across the country have considered First Amendment challenges to discipline imposed on students for speech that school officials viewed as threatening. The overwhelming response has been deference on the part of courts to the judgment of educators as to whether a perceived threat should be taken seriously and met with discipline in order to ensure

the safety of the school community. *See, e.g., Ponce v. Socorro Indep. Sch. Dist.*, 508 F.3d 765, 772 (5th Cir. 2007); *Boim v. Fulton County Sch. Dist.*, 494 F.3d 978, 984 (11th Cir. 2007); *S.G. ex rel. A.G. v. Sayreville Bd. of Educ.*, 333 F.3d 417, 423 (3d Cir. 2003) (rejecting First Amendment challenge to suspension of kindergarten student who said "I'm going to shoot you" to friend during recess); *Doe*, 306 F.3d at 626-27; *LaVine*, 257 F.3d at 990; *Demers ex rel. Demers v. Leominster Sch. Dep't*, 263 F. Supp. 2d 195, 203 (D. Mass. 2003).

The threat of school violence, and the corresponding need for school officials to take preventive action against it, led the Fifth Circuit to hold that "when a student threatens violence against a student body, his words are as much beyond the constitutional pale as yelling 'fire' in [a] crowded theater, and such specific threatening speech to a school or its population is unprotected by the First Amendment." *Ponce*, 508 F.3d at 772 (internal citation omitted). The Eleventh Circuit has reached the same conclusion. *See Boim*, 494 F.3d at 984 ("[T]here . . . is no First Amendment right allowing a student to knowingly make comments, whether oral or written, that reasonably could be perceived as a threat of school violence, whether general or specific, while on school property during the school day."). And in *Morse*, Justice Alito, in a concurring opinion joined by Justice Kennedy, noted that "[s]chool attendance can expose students to threats to their physical safety that they would not otherwise face," and that schools can therefore be "places of special danger." 127 S. Ct. at 2638 (Alito, J., concurring). He went on to observe:

> In most settings, the First Amendment strongly limits the government's ability to suppress speech on the ground that it presents a threat of violence. But due to the special features of the school environment, school officials must have greater authority to intervene before speech leads to violence. And, in most cases, *Tinker*'s "substantial disruption" standard permits school officials to step in before actual violence erupts.

*Id.* (internal citation omitted).

Plaintiffs make several attempts to distinguish *Wisniewski* and similar cases, all of which are unpersuasive. They point out that B.C.'s alleged threat was written in crayon on a picture of an astronaut, whereas Aaron's was "violent," "intentionally provocative" and "understandably distressing [to] the target of his ire." (*See* Pl. Mem. Opp. Mot. Dismiss at 7.) To be sure, Aaron's buddy icon was graphically violent in a way that B.C's words were not, and the fact that the former was targeted to a specific individual perhaps makes it more disturbing, at least to that person. But nothing in *Wisniewski* indicates that these factors were dispositive, and no reason to treat them as such is apparent to this Court. The notion that different First Amendment standards apply to a graphic threat against a specific individual and to a written threat against a larger group is simply unsupported by any case law of which this Court is aware. Nor do reason and experience support the idea. Plainly, threatening words have just as much disruptive potential as a threatening image. And given the phenomenon of mass school shootings with multiple victims, a threat against a school as a whole (or against a group within the school) deserves to be taken at least as seriously as a threat against a specific individual.

Plaintiffs also emphasize the fact that "[u]nlike *Wisniewski* and *Morse*, none of B.C.'s classmates saw the message. Only his teacher saw it." (*Id.*) This argument is based on a misreading of *Wisniewski*, since the distinction plaintiffs highlight actually favors defendants. The fact that Aaron's friends saw the icon was important to the *Wisniewski* court because it increased the likelihood that school officials would see it as well, which militated against First Amendment protection. *See* 494 F.3d at 39-40. Thus, the fact that B.C. delivered his threatening message directly to a teacher rather than a classmate weakens plaintiffs' claim.

8

Plaintiffs' assertion that B.C.'s speech is protected because "school authorities had no *reasonable* basis to conclude that B.C. had the means or intent to carry out any violence at school" (Pl. Mem. Opp. Mot. Dismiss at 8 (emphasis in original)) is not supported by any controlling legal authority or persuasive reasoning. The notion that a school may take action in response to only those threats that the speaker has the apparent ability to carry out is simply inconsistent with *Tinker* and *Wisniewski*, which direct the inquiry to the reasonable foreseeability of substantial disruption. *See Tinker*, 393 U.S. at 513-14; *Wisniewski*, 494 F.3d at 38-40. Defendants could reasonably have viewed B.C.'s writing as a general indication of violent intention or propensity, notwithstanding the fact that he might have been unable to perform the specific violent act he threatened.[3] (Notably, B.C.'s stated wish that the teachers be in the school when he blew it up indicated a desire to harm people as well as property.) And as discussed above, even an unsuccessful attempt at violence has significant disruptive potential, as does the making of the threat itself. *See Wisniewski*, 494 F.3d at 40; *D.F.*, 386 F. Supp. 2d at 125-26.

Finally, the fact that B.C. may have meant his words as a joke (*see* Complt. ¶ 9) does not confer First Amendment protection on them. *Wisniewski* and *Tinker* instruct courts to focus on the reasonableness of the school officials' interpretation, not the speaker's subjective intent. *See Tinker*, 393 U.S. at 513-14; *Wisniewski*, 494 F.3d at 38-40 (holding that the suspension imposed was constitutional "whether or not Aaron intended his IM icon . . . to cause a substantial disruption"); *cf. Morse*, 127 S. Ct. at 2624-25 (noting that although the student claimed the words "BONG HiTS

---

[3] For this reason, plaintiffs' argument that B.C.'s writing is protected because (unlike Aaron's buddy icon), it did not actually interfere with the school's functioning fails as well. (*See* Pl. Mem. Opp. Mot. Dismiss at 7-8.) Even assuming that this is true, *Wisniewski* and *Tinker* do not require actual disruption, only the reasonable foreseeability of it. *See Tinker*, 393 U.S. at 513-14; *Wisniewski*, 494 F.3d at 38-40.

9

4 JESUS" were just "nonsense meant to attract television cameras," the principal's interpretation of the words as a pro-drug message was reasonable, thus giving her the right to restrict them); *Ponce*, 508 F.3d at 772 (holding that a high-school student's violent story involving a school shooting was not constitutionally protected, despite the student's claim that it was a work of fiction and not meant as a threat); *Boim*, 494 F.3d at 984-85 (same).

Defendants could reasonably have concluded that B.C.'s speech would substantially disrupt the school environment, and their resulting decision to discipline B.C. was constitutional.

### III. The Severity of the Disciplinary Measures Imposed

Plaintiffs argue that B.C.'s suspension was "excessive and irrational," as well as a violation of the District's Code of Conduct (the "Code"), which calls for school officials to apply lighter penalties for first offenses. (*See* Pl. Mem. Opp. Mot. Dismiss at 9-10.)

As for the argument that the severity of the disciplinary action violated B.C.'s constitutional rights, plaintiffs cite no authority that supports it, and the Court is not aware of any. Plaintiffs point out that in *Wisniewski*, the Second Circuit apparently assumed that the Constitution limits the severity of discipline that a school may impose on a student for making a threat. *See* 494 F.3d at 40. However, all the court did was note that, since Aaron's parents challenged only the decision to discipline him and not the extent of the discipline, the court did not need to decide whether the latter sort of challenge would properly be brought under the First Amendment or the Due Process Clause of the Fourteenth Amendment. *See id.* The court also stated that since the plaintiffs had not raised the issue, there was no occasion to decide whether the length of Aaron's suspension exceeded "whatever constitutional limitation might exist." *Id.* The result is that *Wisniewski* provides no

10

support for the proposition that B.C.'s suspension was unconstitutionally severe. And in the absence of any other authority that would so indicate, this argument does not entitle plaintiffs to relief.

The argument that the suspension violated the Code fails as well. The Code provides a range of disciplinary measures that may be imposed on a student who makes a threat of violence:

1. verbal warning
2. written notification to the parents
3. probation
4. reprimand
5. suspension from transportation
6. suspension from extracurricular activities
7. suspension of other privileges
8. exclusion from a particular class
9. in-school suspension
10. out-of-school suspension
11. Superintendent's hearing
12. referral to appropriate authorities

(Bergstein Aff'm, Ex. 2. at 9.) The Code also states: "Depending upon the nature of the violation, it is the desire of the Board of Education that student discipline be progressive, i.e., a student's first violation should merit a lighter penalty than subsequent violations." (*Id.*) Plaintiffs claim that since this was B.C.'s first disciplinary violation, imposing out-of-school suspension rather than a lesser penalty violated the Code. (*See* Complt. ¶ 17.)

It is apparent, however, that the suspension did not violate any explicit provision of the Code. The Code creates a discretionary standard for District officials. Rather than mandate a certain course of action with a command such as "shall" or "must," the Code merely states that "it is the desire of the Board of Education that student discipline be progressive," and that statement of intention is tempered by the qualifying phrase "[d]epending on the nature of the circumstances." (Bergstein Aff'm, Ex. 2. at 9.) Nothing in the text of the Code precludes imposition of the disciplinary action

11

taken here.

Unable to point to any violation of the Code itself, plaintiffs can only express their disagreement with the manner in which defendants exercised their discretion to select a form of discipline. That disagreement provides no basis for relief. As the Supreme Court has stated: "It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *see also Bd. of Educ. v. McCluskey*, 458 U.S. 966, 970-71 (1982). The public-school system "relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal-court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees." *Wood*, 420 U.S. at 326; *see also Wisniewski*, 494 F.3d at 40 (quoting *Wood*, 420 U.S. at 326); *LaVine*, 257 F.3d at 992 ("We review, however, with deference, schools' decisions in connection with the safety of their students even when freedom of expression is involved.")

Here, defendants decided – notwithstanding the Code's preference for "progressive discipline" and the fact that this was B.C.'s first offence – that out-of-school suspension was warranted and that B.C.'s record should note the incident. This is exactly the sort of discretionary decision making that is entitled to deference from this Court. It is not the role of this Court to substitute its judgment for that of defendants – who, unlike the Court, are education professionals – but rather to determine whether their actions violated B.C.'s constitutional rights. For the reasons given above, we conclude that they did not.

12

IV. **Qualified Immunity**

Having determined that there was no underlying constitutional violation in this case, we need not decide whether defendant Knecht would be entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

## CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss the Complaint is granted and the action is dismissed with prejudice.

SO ORDERED.

Dated: White Plains, New York
       May 5, 2008

*[signature: William C. Conner]*
Sr. United States District Judge

## AFFIRMATION OF SERVICE

<u>Cuff v Valley Central School District</u>
07 Civ. 10996 (WCC)

I, Stephen Bergstein, affirm that on May 29, 2008 I served by regular mail one copy of plaintiff's Notice of Appeal on counsel for defendants at the below address:

Adam Kleinberg, Esq.
Miranda, Sokoloff et al.
240 Mineola Blvd
Mineola, N.Y. 11501

STEPHEN BERGSTEIN